## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CONSUMERBASE, LLC, d/b/a EXACT DATA, a Limited Liability Company organized under the under the laws of the State of Delaware, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| SEAN PRATSCHER, a citizen of the State of Illinois, and GEORGE LAMBERIS, a citizen of State of Illinois, and GLENCORE LEADS, INC. an entity organized under the laws of the State of Illinois, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES FOR COPYRIGHT INFRINGEMENT, AIDING AND ABETTING VIOLATION OF THE COPYRIGHT ACT, VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, TRESPASS TO CHATTELS, CONVERSION, AND CONSPIRACY TO COMMIT VIOLATIONS OF THE COPYRIGHT ACT, VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, AND INTENTIONAL TORTS

Plaintiff, Consumerbase, LLC, d/b/a Exact Data, by its attorneys, Robert A. Cohen, for its Complaint for Damages against Defendants Sean Pratscher, George Lamberis, and Glencore Leads, Inc. for Copyright Infringement, Aiding and Abetting Violation of the Copyright Act, Violation of the Computer Fraud and Abuse Act, Trespass to Chattels, Conversion, and Conspiracy to Commit Violations of the Copyright Act, Violations of the Computer Fraud and Abuse Act, and Intentional Torts, states as follows.

## NATURE OF THE ACTION

Plaintiff Consumerbase, LLC, d/b/a Exact Data, brings this action to recover damages from Sean Pratscher and George Lamberis for their wrongful use and copying of Plaintiff's electronic

images and data. Plaintiff is in the business of gathering data and selling it, commonly in the form of traditional and electronic mailing lists.

Plaintiff launched an investigation, and discovered Glencore Leads, Inc. Plaintiff learned that Glencore Leads, Inc. took steps to avoid paying Form 941 federal employer taxes, with no evidence of any quarterly tax payments or employee/employer taxes being paid from its operating bank account. Plaintiff learned that Glencore Leads went to extensive lengths to avoid paying taxes. Plaintiff learned of an apparent connection with Glencore, Inc., a Delaware-based publically traded mining company. Plaintiff discovered the connection when it learned that Glencore Leads uses Glencore, Inc.'s taxpayer identification number when asked by a customer which number to use for 1099 reporting purposes. Although from this information it might appear that Glencore, Inc. pays taxes on Glencore Leads' revenue, Glencore, Inc. in fact appears to have no real connection to Glencore Leads, and may have launched its own investigation.

## <u>PARTIES</u>

1.      Plaintiff, ConsumerBase, LLC, d/b/a Exact Data, ("Exact Data" or "Plaintiff") is a Limited Liability Company organized under the laws of the State of Delaware, with its principal place of business in the City of Chicago, County of Cook, State of Illinois.

2.      Defendant, Sean Pratscher, is an individual who resides in Chicago, Cook County, Illinois, and is a citizen of the State of Illinois. Exact Data employed Mr. Pratscher for a period of over two years from 2011 through 2013.

3.      Defendant, George Lamberis, is an individual who resides in Evanston, Cook County, Illinois, and is a citizen of the State of Illinois. Exact Data employed Mr. Lamberis for a period of over one year during 2011 through 2013.

4.      Defendant, Glencore Leads, Inc. ("Glencore Leads") is a corporation organized under the laws of the State of Illinois with its principal place of business located at 1622 Payne Street, Evanston, Illinois  60201

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6.      Jurisdiction and venue are proper because Messrs. Pratscher and Lamberis are residents of the State of Illinois, Glencore Leads is organized under the laws of the State of Illinois, and the acts and omissions giving rise to this Verified Complaint occurred in, were directed from, and emanated from this judicial district.

## FACTS

### 1.      Background

7.      Exact Data is in the business of acquiring, developing, and selling mailing and e-mail lists, and other information ("mailing lists").  Exact Data has been in business for over ten years.  Its officers and key employees, combined, possess over decades of experience in the mailing list business.

8.      The mailing list business is competitive, and success depends largely on the ability to acquire potential customers, and provide tailored mailing lists responsive to the customers' needs.  The cost of acquiring new customers is a major success driver in the mailing list business. An important part of the customer lead acquisition process is capturing natural or organic website traffic by listing over 75,000 "data cards" on the Exact Data website, which in turn is cataloged by Google.

9.      Over the years of its existence, Exact Data has developed techniques and processes that are key to its ongoing success.  Exact Data has also developed and maintained a database of customers and potential customers related to its past business and anticipated future business.  All of these things, and other unique, confidential processes and applications, are confidential matters that are proprietary to Exact Data.

10.     Exact Data maintains in strict confidence its lists, databases, and customer information, processes and applications (collectively, "Confidential Information").  Exact Data takes steps and measures to prevent disclosure of Confidential Information to competitors, customers, and third parties.  Exact Data informs its employees that Confidential Information is not to be shared or disclosed to any party outside of Exact Data, and expects its employees not to share or disclose any Confidential Information.  Exact Data's employees are specifically and actually made aware of Exact Data's expectations and requirements regarding Confidential Information.

**2.      Plan to "Scrape" Data and Divert Exact Data Customers.**

11.     Mr. Pratscher commenced his employment with Exact Data on November 7, 2011 as an Account Executive.  On the same day, Mr. Pratscher signed a "Non-Disclosure and Non-Compete Agreement," attached as Exhibit A.

12.     In September 2012, Exact Data promoted Mr. Pratscher to Vice President of Sales, with expanded responsibilities.

13.     Mr. Pratscher resigned from Exact Data on December 2, 2013.  Mr. Pratscher resigned via an email in which he set forth positive feelings about his experience working for

Plaintiff.  A copy of the December 2, 2013 email is attached as Exhibit B.  Mr. Pratscher copied his farewell email to a number of Exact Data employees,

14.     During his employment, Mr. Pratscher had full access to all Confidential Information.  On the day he was employed, Mr. Pratscher agreed to maintain in strict confidence all of Exact Data's Confidential Information, and not to compete with Exact Data, all as more specifically set forth in the Agreement.

15.     While Mr. Pratscher was still employed with Exact Data, he began working for Defendant Glencore Leads.  Mr. Pratscher was paid by Glencore Leads starting November 25, 2013, one week prior to his resignation from Exact Data.

16.     Plaintiff is informed and believes that Mr. Lamberis encouraged Mr. Pratscher to commence working for Glencore Leads prior to Mr. Pratscher's resignation from Exact Data. Plaintiff is informed and believes that Mr. Lamberis encouraged Mr. Pratscher to confiscate Confidential Information from Exact Data for use by Glencore Leads.   Mr. Lamberis, being a former Exact Data employee, understood how best to use Exact Data's Confidential Information, and its confidential work product, to bring profit to Glencore Leads at the expense of Exact Data.

17.     Mr. Pratscher and Mr. Lamberis worked together to exploit what they knew about Exact Data, and developed a scheme utilizing both Exact Data Confidential Information, as well as more public Exact Data work product, to allow Glencore Leads to copy and transfer Exact Data images and data as if the data and images were owned and produced by Glencore Leads.

18.     The scheme and plan took advantage of and relied upon Exact Data's popularity on the internet, and the user tools Exact Data had developed over a period of years.   Users of Google or other search engines to locate sellers of email or mailing lists likely will find upon Exact Data's

highly ranked web site. That site offers a self-service user tool "data cards" that allows a person to estimate the cost and availability of a potential customer list based on a wide range of parameters that the user searches. This tool is popular, in part because it allows a potential customer to browse without interruption and at his or her pace. There is no limit to the number of searches a potential customer can initiate.

19.     Armed with insider knowledge provided by Mr. Pratscher, Messrs. Pratscher and Lamberis showed Glencore Leads how to launch "scraping" software from Glencore Leads' servers. Scraping is the practice of using an electronic robot to remove data from a website to seize proprietary content. The practice of scraping is done for the purpose of republishing the pages of one website, to create a copycat website, to give the impression that the copycat website (Glencore) has the same data card (lists), to create confusion in the market place, and most egregiously, "trick" Google into presenting Exact Data and Glencore's website together in natural or organic search results, because Glencore copied Exact Data, they have identical content.

20.     As the result of Mr. Pratscher and Mr. Lamberis' efforts, Glencore Leads is reaping hundreds of thousands of dollars in sales that rightfully belonged to Exact Data. Glencore Leads has paid Mr. Pratscher approximately $79,000.00 since Mr. Pratscher joined Glencore Leads, including the money Mr. Pratscher was paid while still working for Exact Data. Glencore Leads, for its part, made efforts to conceal itself. Complaints by Exact Data regarding Glencore Leads' pirating activities have resulted in Glencore Leads sites being taken down, only to be replaced by other web sites.

**3.      Facts Relevant to Sean Pratscher and George Lamberis.**

21.     Mr. Pratscher and Mr. Lamberis apparently understood that it would take a more subtle approach to meaningfully profit from the work and industry that Exact Data has put into its business.   They were not deterred, however, and made a conscious decision to violate their fiduciary duties and their contractual duties, toward the end of making more money than they could honestly earn.   Having made that decision, the individual defendants created the scraping scheme. They then either partnered with, or created, Glencore Leads, taking care to hide their trail.

22.     Mr. Pratscher took an unusual path to avoiding detection by Exact Data: he filed an unemployment claim.   This was an unusual measure for a number of reasons.   Mr. Pratscher was in fact employed, and he voluntarily left Exact Data -- both reasons for disqualifying him for unemployment benefits.   And yet, when Mr. Pratscher lost, he filed an appeal, doing absolutely nothing afterward.   Of course he lost the appeal.   At the time Plaintiff did not understand why Mr. Pratscher engaged in this seemingly pointless exercise.   Now, it appears Mr. Pratscher may have pursued a pointless claim as a peculiar form of misdirection.

23.     As with Mr. Pratscher, Glencore Leads went to great lengths to hide its activities. Investigation has revealed that when asked for a taxpayer identification number, which any company must give up to a person paying more than $600 to that company, Glencore Leads has apparently decided to create deliberate confusion and conceal income, by providing the taxpayer identification number of Glencore, a massive multi-national mining company.   The net effect of this tactic, if it is in fact being carried out, would be to attribute Glencore Leads' income to Glencore , hoping that Glencore would not notice.

24.     All of the foregoing subterfuge must have seemed necessary, but it did not work. Mr. Pratscher and Mr. Lamberis either worked with or formed Glencore Leads for the purpose of

taking Exact Data's property. The two individuals did this deliberately, and with full knowledge that it was wrong to do so.

25.     Plaintiff's investigation of Glencore's pirating of its data and web pages led to sites being blocked or discontinued, but new ones quickly took their places. Mr. Pratscher and Mr. Lamberis' conduct was calculated and is grounds not only for damages, but punitive damages as well.

26.     As the result of Defendants' conduct, Plaintiff has incurred actual damages (including direct business losses) believed to be in excess of $250,000.00.

**COUNT I**
**Violation of Copyright Act**
**17 U.S.C. Section 501**
**(Glencore Leads)**

27.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

28.     Exact Data is the owner of its copyrights in images and presentations on its web pages generated at Exactdata.com.

29.     Beginning in 2012, and continuing through the present day, Glencore Leads, without Plaintiff's permission or knowledge, copied pages or images and text presentations from the Exact Data website, and have created derivative works therefrom. Glencore Leads has published these copies and derivative works on websites owned by it, which have been presented to customers and potential customers of Exact Data.

30.     Defendant Glencore Leads copied Exact Data's copyrighted images and pages for its own profit and advantage without Plaintiff's permission, in violation of Plaintiff's copyright.

31.     By reason of the above acts, Defendant Glencore Leads Glencore Leads violated

17 U.S.C. Section 501, and infringed Plaintiff's copyright.

32.     Plaintiff has suffered damages as a result of Defendants conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against Glencore Leads, Inc. in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

## COUNT II
## Aiding and Abetting Violation of Copyright Act
### (Sean Pratscher)

33.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

34.     Beginning in 2012, and continuing through the present day, Mr. Pratscher, without Plaintiff's permission or knowledge, encouraged and assisted in the copying of pages or images and text presentations from the Exact Data website, as well as derivative works therefrom.  Mr. Pratscher encouraged such copying for their own profit and advantage.

35.     Mr. Pratscher did in fact profit from the copyright violation he encouraged.

36.     By reason of the foregoing, Mr. Pratscher induced, participated, and aided and abetted in, and profited from, this copying of and making of derivative works of Exact Data's web

site pages.

37.     Plaintiff has suffered damages as a result of Defendant's conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against Sean Pratscher in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

**COUNT III**
**Violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act ("CFAA")**
**(Glencore Leads)**

38.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

39.     Glencore Leads violated 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of a command to scrape data from Exact Data's website, and also to copy images and pages from that website, which are hosted on protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication. By engineering scraping of data and copying, Glencore Leads caused damage in the form of economic loss, including loss of customers and sales.

40.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally   accessing

Exact Data's computers for the specific purpose of injuring Exact Data's business.

41.     Plaintiff has suffered damages as a result of Defendant's conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff  Consumerbase, LLC d/b/a Exact Data requests judgment against Glencore Leads, Inc. in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

### COUNT IV
### Trespass to Chattels
### (Glencore Leads)

42.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

43.     Defendants intentionally dispossessed and/or deprived Plaintiffs of digital content it properly generated on its servers and shared with potential clients for legitimate uses, by remotely scraping and copying said digital content.

44.     Plaintiffs did not consent to Defendants dispossessing them and/or depriving them of their digital content by way of remote copying.

45.     Defendants did not have legal authority to seize or take dominion over Plaintiff's digital content. Defendants have no more right to copy data on the internet than it would have to

enter Plaintiff's physical premises and copy customer information without permission.

46.     Plaintiff has suffered damages as a result of Defendants conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against Glencore Leads, Inc. in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

**COUNT V**
**Conversion**
**(Glencore Leads)**

47.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

48.     Exact Data has an exclusive right to the manner of presentation of the results of searches it generates prior to releasing them to potential customers.   Exact Data provides information to potential clients only in the form generated by its program, and provides it to no one other than the user who has asked for it, and only in the format Exact Data chooses.

49.     Glencore Leads intentionally dispossessed Plaintiff of its exclusive use of digital content they rightfully possessed by scraping, and diverting the content onto a different form.

50.     Plaintiff did not consent to Glencore Leads taking possession of its content by

scraping and diverting that content.

51.     Demand for return would be impractical and unnecessary, because Glencore Leads' act of appropriating the data renders it useless, and in fact destroys its value.

52.     Plaintiff has suffered damages as a result of Defendants conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff  Consumerbase, LLC d/b/a Exact Data  requests judgment against Glencore Leads, Inc. in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

### COUNT VI
### Conspiracy To Commit Violations Of The Copyright Act, Violations Of The Computer Fraud And Abuse Act, And Intentional Torts
### (Sean Pratscher)

53.     Plaintiff restates and realleges Paragraphs 1 through 51 as if fully alleged in this Count.

54.     During the term of his relationship with Plaintiff, Mr. Pratscher was given access to the protected Confidential Information.   While still employed by Plaintiff, Mr. Pratscher misappropriated the Confidential Information.   He took this information to Mr. Lamberis, and between the two of them they created a scheme to cause all of the harm alleged above.

55.     Through this scheme, Mr. Pratscher took a series of definite and certain steps to violate Plaintiff's rights and to take wrongful action against Plaintiff.  Mr. Pratscher's goal was to work with Mr. Lamberis to profit at Plaintiff's expense.  Among other things, Mr. Pratscher took the following steps in furtherance of his conspiracy with Mr. Lamberis:

A.      Mr. Pratscher breached his fiduciary duty by commencing work for Glencore Leads while still employed by Exact Data.

B.      Mr. Pratscher stole Confidential Information and turned it over to Glencore Leads, in whole or in part at the direction of Mr. Lamberis or with Mr. Lameris' cooperation.

C.      Mr. Pratscher  breached his contractual obligations to Exact Data.

D.      Mr. Pratscher, working with Mr. Lamberis, devised a plan and method for scraping data from Exact Data sites.

E.      Mr. Pratscher, working with Mr. Lamberis, devised a plan to undercut Exact Data list prices.

F.      Mr. Pratscher created or engaged with Glencore Leads to carry out this plan.

56.     Mr. Pratcher's wrongful conduct was committed by the three defendants working in active concert and in furtherance of their conspiracy, and was knowing, willful and malicious.  Mr. Lamberis knew that Mr. Pratscher's breach of his fiduciary duty, and his own breach, and other wrongful conduct alleged herein was likely to cause harm to Plaintiff.  Mr. Lamberis proceeded with the conspiracy, in spite of his knowledge of its wrongfulness, rather than compete honestly.

57.     Mr. Pratcher's knowing actions did, in fact, cause Plaintiff to suffer damages as a result of his conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.   The fact that the two individual defendants are

knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against Sean Pratscher in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

## COUNT VII
## Aiding and Abetting Violation of Copyright Act
### (George Lamberis)

58.     Plaintiff  Exact Data incorporates by reference Paragraphs 1-26 above as if fully alleged in this Count.

59.     Beginning in 2012, and continuing through the present day, Mr. Lamberis, without Plaintiff's permission or knowledge, encouraged the copying of pages or images and text presentations from the Exact Data website, as well as derivative works therefrom.  Mr. Lamberis encouraged such copying for their own profit and advantage.

60.     By reason of the foregoing, Mr. Lamberis induced, participated, and aided and abetted in, and profited from, this copying of and making of derivative works of Exact Data's web site pages.

61.     Plaintiff has suffered damages as a result of Defendant's conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished.   Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy.  The fact that the two individual defendants are knowledgeable of the company's workings has added to the

difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against George Lamberis in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

### COUNT VIII
### Conspiracy To Commit Violations Of The Copyright Act, Violations Of The Computer Fraud And Abuse Act, And Intentional Torts
### (George Lamberis)

62.     Plaintiff restates and realleges Paragraphs 1 through 51 and Paragraphs 59-60 as if fully alleged in this Count.

63.     During the term of his relationship with Plaintiff, Mr. Lamberis was given access to the protected Confidential Information. Mr. Lamberis acquired additional Confidential Information from Mr. Pratscher, which Mr. Lamberis intended that Mr. Pratscher misappropriate. Mr. Lamberis used this Confidential Information, with he and Mr. Pratscher creating a scheme to cause all of the harm alleged above.

64.     Through this scheme, Mr. Lamberis took a series of steps to violate Plaintiff's rights and to take wrongful action against Plaintiff Mr. Lamberis took definite and measured steps toward achieving the goal of his conspiracy with Mr. Pratscher. The goal of that conspiracy was to work with Mr. Pratscher to profit at Plaintiff's expense. Among other things, Mr. Lamberis did the following:

A.     Mr. Lamberis directed or encouraged Mr. Pratscher to steal Confidential Information, or cooperated with Mr. Pratscher to seal and exploit, Confidential Information to turn over to Glencore Leads.

B.     Mr. Lamberis breached his contractual obligations to Exact Data.

16

C.     Mr. Lamberis, working with Mr. Pratscher devised a plan and method for scraping data from Exact Data sites.

D.     Mr. Lamberis, working with Mr. Pratscher and Glencore Leads, devised a plan to undercut Exact Data list prices.

E.     Mr. Lamberis created or engaged with Glencore Leads, and worked with Mr. Pratscher, to carry out this plan.

65.     Mr. Lamberis' wrongful conduct was committed by the three defendants working in active concert and in furtherance of their conspiracy, and was knowing, willful and malicious. Mr. Lamberis knew that Mr. Pratscher's breach of his fiduciary duty, and his own breach, and other wrongful conduct alleged herein was likely to cause harm to Plaintiff. Mr. Lamberis proceeded with the conspiracy, in spite of his knowledge of its wrongfulness, rather than compete honestly.

66.     Mr. Lamberis' knowing actions did, in fact, cause Plaintiff to suffer damages as a result of his conduct, because, without limitation, Plaintiff has lost customers and has seen its reputation and the value of its user tools diminished. Plaintiff has also suffered damage in that it has had to police activities stemming from searches on its site, and must also attempt countermeasures for this type of piracy. The fact that the two individual defendants are knowledgeable of the company's workings has added to the difficulty in preventing this type of taking and resulting injury.

WHEREFORE, Plaintiff Consumerbase, LLC d/b/a Exact Data requests judgment against George Lamberis in an amount in excess of $250,000.00, plus punitive damages, together with prejudgment interest, court costs, attorneys' fees, and such other and further relief as this court deems just.

CONSUMERBASE LLC d/b/a EXACT DATA

/s/ Robert A. Cohen

Robert A. Cohen
The Rob Cohen Law Office, LLC
444 Skokie Boulevard, Suite 301
Wilmette, Illinois, 60091
(847) 256-0800
rob@robcohenlaw.com